UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAUGHN J.,[1]<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Acting Commissioner of Social Security,[2]<br><br>　　　　　　　　　Defendant. | Case No.: 24cv1124-SBC<br><br>**ORDER RESOLVING JOINT MOTION FOR JUDICIAL REVIEW IN FAVOR OF PLAINTIFF AND REMANDING TO THE COMMISSIONER**<br><br>**[ECF No. 21]** |

　　　On June 27, 2024, Plaintiff Vaughn J. commenced this action against Defendant Frank Bisignano, Commissioner of Social Security, for judicial review under 42 U.S.C. § 405(g) of a final adverse decision for supplemental security income. (ECF No. 1.) The Administrative Law Judge ("ALJ") found that Plaintiff was not disabled and denied Plaintiff's claim for benefits since June 29, 2021, the date the application was filed. (ECF No. 11 at 40 [Administrative Record "AR"].) On August 8, 2024, Magistrate Judge Valerie E. Torres determined that Plaintiff's complaint did not survive screening under 28 U.S.C.

---

[1] The Court refers to Plaintiff using only his first name and last initial pursuant to the Court's Civil Local Rules. *See* S.D. Cal. Civ. R. 7.1(e)(6)(b).

[2] Frank Bisignano is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

1

§ 1915(e)(2)(B), and dismissed the complaint with leave to amend. (ECF No. 8.) That same day, Plaintiff filed an amended complaint, which is the operative complaint in this case. (ECF No. 9.)

Now pending before the Court is the parties' joint motion for judicial review of the final decision of the Commissioner of Social Security, filed on January 21, 2025. (ECF No. 21.) On February 3, 2025, Plaintiff consented to the undersigned's jurisdiction to conduct all proceedings in this case. (ECF No. 22.)[3] For the reasons set forth below, the Court **REVERSES** the final decision of the Commissioner and **REMANDS** this matter for further administrative proceedings consistent with the findings presented herein.

## I.   PROCEDURAL HISTORY

On June 29, 2021, Plaintiff filed an application for supplemental social security benefits, alleging disability beginning June 1, 2020, due to autism and a mental breakdown. (AR at 230-239, 255.) Plaintiff's application was denied on November 24, 2021, and again on reconsideration on February 15, 2022. (*Id*. at 147-151, 155-160.) On February 28, 2022, Plaintiff submitted a written request for a *de novo* hearing by an ALJ. (*Id*. at 161-164.) On December 14, 2022, ALJ Joseph Doyle presided over the hearing. (*Id*. at 45-80.) Plaintiff appeared by online video, and was not represented by an attorney. (*Id*. at 47.) Plaintiff, Plaintiff's mother, Anna Romero, and vocational expert, Kent Granat, testified at the hearing. (*Id* at 45.)

On July 6, 2023, the ALJ issued an unfavorable decision denying Plaintiff's request for disability benefits. (AR at 19-40.) On August 24, 2023, Plaintiff submitted a written request for review to the Appeals Council. (*Id*. at 226-227.) On May 28, 2024, the Appeals Council denied Plaintiff's request for review. (*Id*. at 1-4.) Having exhausted all administrative remedies, Plaintiff brought this timely civil action, seeking judicial review pursuant to 42 U.S.C. § 405(g). (*See* ECF No. 9.)

/ / / /

---

[3] The United States has informed the Court of its general consent to Magistrate Judge jurisdiction in cases of this nature. *See* S.D. Cal. Gen. Order No. 707 (Apr. 12, 2019).

## II.  SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (describing five steps).[4] The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since June 29, 2021, the date of his application. (AR at 25.) At step two, the ALJ found that Plaintiff had the following severe impairments: (1) autism spectrum disorder; (2) schizoaffective disorder; (3) generalized anxiety disorder; (4) obesity; and (5) asthma. (*Id.*) He noted that the record contains some complaints of left shoulder pain, but the ALJ found the record fails to establish a medically determinable impairment because of no imaging of the shoulder, or any substantive treatment. (*Id.*) He found Plaintiff's gastroesophageal reflux disease non-severe because "the record fails to indicate related symptoms that would have more than minimally interfered with the ability to perform work-related activities for 12-consecutive months." (*Id.*) For any other impairments alleged within the record, the ALJ found that they were "non-severe or not medically determinable as they have been responsive to treatment, cause no more than minimally vocationally relevant limitations, have not lasted or are not expected to last at a 'severe' level for a continuous period of 12 months, are not expected to result in death, or have not been properly diagnosed by an acceptable medical source." (*Id.*)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment[5]. (*Id.*) Regarding Plaintiff's asthma, the ALJ stated that "the record does not establish the medical

---

[4] The disability insurance benefits ("DIB") and supplemental security income ("SSI") regulations relevant to this case are virtually identical. Therefore, only the DIB regulations will be cited in the remainder of this order. Parallel SSI regulations are found in 20 C.F.R. §§ 416.900–416.999 and correspond with the last digits of the DIB cite (e.g., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

[5] If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR §§ 404.1509 and 416.909), the claimant is deemed disabled. If it does not, the analysis proceeds to the next step.

signs, symptoms, laboratory findings or degree of functional limitation required . . . and no acceptable medical source . . . has concluded that [it] . . . medically equals a listed impairment." (*Id.*) Regarding Plaintiff's obesity, the ALJ stated that "there is no listing for obesity . . . but [it] has been carefully considered." (*Id.*) The ALJ further stated that it has not "resulted in any end-organ damage[,]" and although it may aggravate Plaintiff's complaints, particularly his asthma impairment, "it does not reasonably appear that the extent of his obesity, even when considered in combination with his other documented impairments, meets or equals a listed impairment or would preclude all work." (*Id.* at 26.) Lastly, the ALJ found that Plaintiff's "mental impairments, considered singly and in combination, do not medically equal the criteria of listings." (*Id.*)

When a claimant's impairments, or combination of impairments, do not meet the criteria of a listed impairment, as was the case here, the ALJ next determines the claimant's residual functional capacity ("RFC"), i.e., the ability to do physical and mental work activities despite the claimant's impairments. (*See* AR at 28.) Step four then considers whether the claimant is not disabled because he has the RFC to do past relevant work, and step five looks at the claimant's ability to do any other work considering his RFC, age, education, and work experience. (*Id.* at 38-39.)

At step four, the ALJ determined that Plaintiff had no relevant past work. (AR at 38.) The ALJ concluded, however, that considering Plaintiff's age, education, work experience and RFC, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 39.) The ALJ accepted the testimony of the vocational expert, who determined that Plaintiff could perform the requirements of Janitor (D.O.T. 381.687-018), Hand Launderer (D.O.T. 361.684-010), and Laundry Sorter (D.O.T. 369.687-014). (*Id.* at 39.)

In reaching his decision, the ALJ assessed Plaintiff as retaining the RFC to perform a range of medium work as defined in 20 C.F.R. § 416.967(c), with the following limitations:

> [Plaintiff can] have exposure to up to moderate noise levels; could have only occasional exposure to concentrated airborne irritants, such as fumes, odors, dusts, gases and poorly ventilated areas; limited to the performance of simple, routine and repetitive tasks; limited to work in a low-stress environment defined as requiring only occasional decision-making and only occasional changes in work setting; limited to work establishing only production quotas based on end of workday measurements without fast-paced production quotas or assembly line work; and limited to only occasional interaction with co-workers. The claimant should have no interaction with the public but can work in the vicinity of the public.

(AR at 28.)

The ALJ stated that the RFC assessment was based on "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p." (AR at 29.) The ALJ also stated that he considered the medical opinions and prior administrative medical findings in accordance with 20 C.F.R. § 416.920(c). (*Id.*) Accordingly, the ALJ concluded that Plaintiff had not been under a disability since June 29, 2021, the date Plaintiff's application was filed. (*Id.* at 40.)

### III.   ISSUE IN DISPUTE

The sole issue in dispute is whether the ALJ's RFC determination is supported by substantial evidence. (*See* ECF No. 21.) In resolving this question, the Court considers the ALJ's evaluation of the medical opinions, and whether the ALJ's duty to develop the record was triggered.

### IV.   STANDARD OF REVIEW

On appeal, the Court reviews claims for SSI benefits under Title XVI of the Social Security Act either for an absence of substantial evidence supporting the ALJ's decision or for legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing 42 U.S.C. § 405(g)). It is therefore the Court's duty to review the entire record and determine whether substantial evidence exists to support the ALJ's findings. *Smolen v.*

*Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). However, the Court may not make independent findings, it is limited to reviewing the determinations presented by the ALJ in their decision. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("[W]e can affirm the agency's decision to deny benefits only on the grounds invoked by the agency . . . ."). If the evidence in the record reasonably supports the ALJ's decision, the decision will be upheld. *Andrews*, 53 F.3d at 1039-40 (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)) ("We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."). The Court may also affirm the ALJ's decision even if the ALJ committed error, so long as the error is harmless. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). A harmless error is one that is inconsequential to the ultimate decision, *id.*, or that is not prejudicial to the claimant. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## V.   DISCUSSION

### A.   Whether the ALJ Properly Evaluated the Medical Opinion Evidence

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the medical evidence. (ECF No. 21 at 4-8.) Plaintiff argues that the RFC assessment is based on lay opinion since the ALJ improperly rejected the opinions of Dr. Hawkins, Dr. Rozenfeld, Dr. Taylor, and Dr. Kugel, as unpersuasive. (*Id.*) Accordingly, Plaintiff asserts that the ALJ failed to "adequately explain how he arrived at his RFC assessment." (*Id.* at 7.) In response, Defendant maintains that the ALJ properly rejected the medical opinions, and correctly assessed Plaintiff's RFC. (*Id.* at 9-15.)

Under the new regulations applicable to Plaintiff's claim, the ALJ does not need to give special deference to treating physicians, but instead must evaluate the persuasiveness of each medical opinion according to the factors set out in 20 C.F.R. §§ 404.1520c, 416.920c. *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022). Now, the ALJ must evaluate the persuasiveness of medical source opinions by considering prescribed enumerated factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5). The "most

important factors" considered are consistency and supportability. *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2). The regulations describe supportability as: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency is described as: "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

When the ALJ finds a medical opinion unpersuasive, courts treat this as rejecting the medical opinion. *See, e.g.*, *Woods*, 32 F.4th at 792-94; *Steven R. T. v. Kijakazi*, No. 20-CV-2257-KSC, 2022 WL 2303950, at *12 (S. D. Cal. June 24, 2022). An ALJ cannot reject a medical opinion as unsupported or inconsistent without explaining why, and that explanation must be supported by substantial evidence. *Woods*, 32 F.4th at 792. The ALJ must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792. Factors that detract from a medical opinion's persuasiveness include extreme evaluations that do not comport with the rest of the evidence on record, opinions that contradict the medical source's records, and "check box form[s]" that contain little or no explanation of their conclusion. *Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023).

Here, the ALJ found the opinions of Dr. Kugel, Dr. Hawkins, Dr. Rozenfeld, and Dr. Taylor, unpersuasive. The Court examines the ALJ's evaluation of the medical opinions below.

**1. Dr. Kugel**

In September 2020, Dr. Uri Kugel, a licensed clinical psychologist, performed a psychological evaluation of Plaintiff via telehealth due to the COVID-19 pandemic. (AR at 394-404.) Dr. Kugel observed that Plaintiff's "overall demeanor was disengaged,

uninterested, and awkward" during the examination. (*Id*. at 396.) However, he was "cooperative and respectful[,]" and "showed motivation to perform well but did report anxiety." (*Id*. at 397.) Dr. Kugel diagnosed Plaintiff with autism spectrum disorder, and found that he displayed severe symptoms, including "poor social understanding and interest, impaired social communication, and difficulty with hyper-focused behavior." (*Id*. at 402.) Dr. Krugel stated the following regarding Plaintiff's results:

> As this evaluation was conducted using telehealth services and due to limited internet connectivity, only several subtests were administrable. Therefore, the following results should be taken with caution. It is recommended that Vaughn's cognitive functioning will be reevaluated when a face-to-face meeting will become possible. Due to limited data, the FSIQ and most WAIS Indexes scores were not calculated. However, limited data suggest overall cognitive performance within the Average to the High Average range. Vaughn performed within the Average range on the VCI. On the Matrix Reasoning subtest which measures fluid reasoning and grasping nonverbal concepts, Vaughn performed within the High Average range.

(AR at 400.)

Dr. Kugel concluded that, based on the evaluation, prior testing reports, records review, and interviews with Plaintiff and Plaintiff's mother, Plaintiff does not meet the intellectual disability criteria. (AR at 402.) Dr. Kugel also noted the following:

> [Plaintiff] displayed [s]everely [i]mpaired listening response. He displayed [m]oderately [i]mpaired social emotional understanding, emotional expression and regulation, adaptation to change and restricted interests, fear response, and intellectual response. He displayed [m]ildly [i]mpaired relating to people, body use, object use in play, visual response, touch response, verbal communication, nonverbal communication, and cognitive integration skills.

(AR at 402.) Dr. Kugel further noted "significant impairments" in socialization and communication, "maladaptive speech[,]" and "hypersensitivity to sensory stimuli and obsessive behavior . . . that often interferes with his functioning." (*Id*.)

The ALJ acknowledged Dr. Kugel's opinion, but found it unpersuasive. (AR at 38.) The ALJ explained that while the opinion suggested "some deficits in the identified areas," it failed to articulate the extent of Plaintiff's limitations "in Agency-recognized terms."

(*Id.*) For example, the ALJ noted that terms such as "significant impairments," is not defined as "mild, moderate, marked or extreme," and "poor social understanding, impaired social communication, and difficulty with hyper-focused behavior[,]" are not defined in Agency-recognized terms. (*Id.*) (internal quotations omitted.) The ALJ concluded that "[w]ithout clarity, the opinion statements, albeit accompanied by a narrative evaluation report as attempted support, are too vague and ambiguous to be found consistent with the evidence as a whole." (*Id.*)

### a. Consistency & Supportability

The ALJ is required to articulate how he considered both the consistency and supportability factors of a medical source's opinion when determining its persuasiveness. *Woods*, 32 F.4th at 792. Here, the ALJ addressed consistency, finding that Dr. Kugel's opinion was "too vague" to be consistent with the record because it did not define Plaintiff's limitations in Agency-recognized terms. (AR at 38.) The Court, therefore, finds that substantial evidence supports the ALJ's finding that Dr. Kugel's opinion was unpersuasive under the consistency factor.

However, the ALJ did not adequately evaluate the supportability factor that affected his analysis of Dr. Kugel's opinion. Although the ALJ noted that Dr. Kugel's opinion was "accompanied by a narrative evaluation report as attempted support," he made no explicit finding as to whether the opinion was supported by objective medical evidence, or why the narrative evaluation report was insufficient. (*See* AR at 38.) Instead, the ALJ summarized the opinion, and generally stated that it was "too vague and ambiguous" to be consistent with the record. (*See id.*) The ALJ must explain his reasoning under both the consistency and supportability factors. *Woods*, 32 F.4th at 792. Accordingly, the Court finds that the ALJ erred by not sufficiently evaluating the supportability factor in finding Dr. Kugel's opinion unpersuasive.

### 2. Dr. Hawkins & Dr. Rozenfeld

Dr. Pamela Hawkins is a state agency medical consultant who reviewed Plaintiff's medical records and performed an initial disability determination evaluation in November

9

2021. (AR at 108-126.) Dr. Hawkins found that Plaintiff was not disabled, noting that his "condition results in some limitations . . . to perform work related activities but does not prevent [Plaintiff] from working." (*Id*. at 124-125.) She identified two severe impairments: (1) autism spectrum disorder; and (2) depressive, bipolar, and related disorders. (*Id*. at 116.) Dr. Hawkins further found that Plaintiff's symptoms included "[s]ustained concentration and persistence limitations," "[s]ocial interaction limitations," and "[a]bility to adapt limitations." (*Id*. at 118.)  However, she concluded that Plaintiff was able to understand and remember instructions and procedures, and was capable of "maintain[ing] attention and concentration for at least two hours at a time as required to perform simple tasks, sufficiently to complete an 8 hour day and a 40 hour week." (*Id*. at 119-121.)

Regarding social interaction limitations, Dr. Hawkins found Plaintiff "best suited to a non-public setting. [Plaintiff] can work in proximity with coworkers but not on joint or shared tasks. [Plaintiff] is able to handle occasional supervisory contact." (AR at 122.) She also found Plaintiff to be moderately limited in adapting to changes in work environments, nothing that he would "work best in structured environments with predictable work tasks and with minimal social contacts with others that do not require a great deal of decision making or goal setting." (*Id.*)

Dr. Ellen Rozenfeld, another state agency medical consultant, reviewed Plaintiff's medical records and performed a disability evaluation on reconsideration in February 2022. (AR at 127-146.) Dr. Rozenfeld noted Plaintiff's recent report that his mental condition was "worsening" due to "breakdowns every 2 weeks, sharp pains in chest, excessive thoughts, uncontrollable emotions(anger/sadness)," inability to shower, and needing assistance with most activities of daily living. (*Id*. at 134.) Dr. Rozenfeld affirmed Dr. Hawkins' initial finding that Plaintiff was not disabled, and reached the same conclusions regarding Plaintiff's capabilities and limitations. (*See id*. at 139-144.)

The ALJ found Dr. Hawkins and Dr. Rozenfeld's opinions unpersuasive because "although accompanied by some narrative discussions of the evidence as attempted support, they are unable to be found consistent with the evidence as a whole." (AR at 36-

37.) The ALJ explained that neither doctor "appreciated a pace limit," which would have addressed Plaintiff's documented difficulties with distractibility. (*Id.*) The ALJ also noted that the doctors' opinions that Plaintiff have no contact with coworkers and only limited contact with supervisors was inconsistent with other evidence, such as Plaintiff being polite, capable of creating rapport, and exhibiting no signs of aggression. (*Id.*) For these reasons, the ALJ concluded that the evidence was "most consistent with [the] ability to have occasional interactions with co-workers." (*Id.*) Furthermore, the ALJ found that the opinions failed to appreciate Plaintiff's trouble adapting to changes in routine or stressors, rendering their opinions further inconsistent with Plaintiff's documented "adaptive functioning deficits." (*Id.*)

The ALJ also highlighted that the opinions focused on "what situations [Plaintiff] was best-suited for, which does not address the maximum he is capable of performing." (*Id.* at 37.) He found the opinions "somewhat vague, as [they] did not define to what extent, if any, in Agency-recognized terms, the [Plaintiff] could engage in decision-making or goal setting." (*Id.*) Ultimately, the ALJ concluded that because the opinions "lack pace or adaptability limits and otherwise offer interacting limits inconsistent with the record, they are generally inconsistent with the record, and thus, unpersuasive." (*Id.*)

### a. Consistency & Supportability

As previously mentioned, the ALJ is required to articulate how he considered both the consistency and supportability factors of a medical source's opinion when determining its persuasiveness. *Woods*, 32 F.4th at 792. Here, the ALJ addressed how Dr. Hawkins and Dr. Rozenfeld's opinions regarding Plaintiff's ability to interact with others, the failure to address adaptive functioning deficits, and the need for a pace limit, were inconsistent with other medical evidence in the record. Therefore, the Court finds that substantial evidence supports the ALJ's finding that Dr. Hawkins and Dr. Rozenfeld's opinions were unpersuasive under the consistency factor.

However, the ALJ did not evaluate the supportability factor that affected his analysis of the doctors' opinions. While the ALJ stated that Dr. Hawkins and Dr. Rozenfeld's

opinions were "accompanied by some narrative discussion of the evidence as attempted support" he made no explicit determination of supportability. (*See* AR at 36-37.) The ALJ identified Dr. Hawkins and Dr. Rozenfeld's findings and presented other medical evidence that was inconsistent with their opinions, but did not explain whether their opinions were supported by objective medical evidence, or why the narrative discussion of the evidence was insufficient. (*See id.*) The ALJ must explain his reasoning under both the consistency and supportability factors. *Woods*, 32 F.4th at 792. Accordingly, the Court finds that the ALJ erred by not sufficiently evaluating the supportability factor in finding Dr. Hawkins and Dr. Rozenfeld's opinions unpersuasive.

### 3. Dr. Taylor

Dr. Clifford Taylor, who is a licensed psychologist, consultatively examined Plaintiff during his initial claim for SSI benefits in September 2021. (AR at 414-420.) Dr. Taylor concluded that Plaintiff was mildly or moderately impaired in his ability to perform detailed and complex work, perform work activities consistently, perform work without specialized supervision, complete a workday without a psychologically caused interruption, accept instructions from supervisors, be around coworkers and the public, and manage usual workplace stress. (*Id.* at 419.) Dr. Taylor, however, concluded that Plaintiff's ability to complete simple and repetitive tasks, and maintain regular attendance at work, was unimpaired. (*Id.*) Dr. Taylor noted that Plaintiff's autism symptoms "were not significantly readily apparent" during the exam. (*Id.*) Dr. Taylor recognized, however, Plaintiff's social difficulties, but concluded they were "likely associated with schizoaffective disorder." (*Id.*)

The ALJ stated that Dr. Taylor's findings of "moderate limits in concentrating, persisting, or maintaining pace, adapting or managing oneself and interacting with others[,]" were "largely consistent with the evidence." (AR at 37.) However, the ALJ found Dr. Taylor's opinion unpersuasive because "although accompanied by a narrative exam report as attempted support, the evidence is inconsistent with need for a restriction

on interaction with supervisors." (*Id.* at 37.) The ALJ noted the following regarding the inconsistency:

> The claimant does have autism with anxiety and schizoaffective disorders. Testimony emphasized social anxiety. The claimant was also observed as anxious as of his consultative exam. Still, rapport was adequate. He also answered questioned directly. Moreover, he has been described as polite and soft-spoken. The record also generally lacks indications of aggressive or volatile behavior. Notably, he and his mother suggested he has some fear of some authority figures (Exs. 33E and 4). Yet, as of his hearing, the claimant admitted that he had interviewed for a sales job about two years ago. While he never heard back, he made no mention of difficulties during the interview. His mother's testimony also made no mention of significant difficulties interacting with authority figures . . . As the evidence, in its entirety, appears inconsistent with need for a limit on supervisor contact, Dr. Taylor's opinion is unpersuasive.

(AR at 37-38.)

### a. Consistency & Supportability

As previously mentioned, the ALJ is required to articulate how he considered both the consistency and supportability factors of a medical source's opinion when determining its persuasiveness. *Woods*, 32 F.4th at 792. Here, the ALJ addressed how Dr. Taylor's opinion regarding Plaintiff's need for a limit on supervisor contract was inconsistent with the evidence by highlighting that Plaintiff answered questions directly, has been described as polite and soft-spoken, has no aggressive or volatile tendencies, and while there has been some suggested fear or authority figures, there is no mention of significant difficulties. (AR at 37-38.) Therefore, the Court finds that there is substantial evidence for finding Dr. Taylor's opinion unpersuasive under the consistency factor.

However, the ALJ did not sufficiently evaluate the supportability factor that affected his analysis of Dr. Taylor's opinion. While the ALJ stated that Dr. Taylor's opinion was "accompanied by a narrative exam report as attempted support" he made no explicit determination of supportability. (*See* AR at 36-37.) The ALJ merely identified Dr. Taylor's findings and presented other evidence that was inconsistent with his opinion. (*See id.*) He did not explain whether Dr. Taylor's opinion was supported by objective medical evidence,

or why the narrative exam report was insufficient. The ALJ must explain his reasoning under both the consistency and supportability factors. *Woods*, 32 F.4th at 792. Accordingly, the Court finds that the ALJ erred by not sufficiently articulating the supportability factor in finding Dr. Taylor's opinion unpersuasive.

For the above reasons, the Court finds that the ALJ's evaluation of Dr. Kugel, Dr. Hawkins, Dr. Rozenfeld, and Dr. Taylor's opinions were inadequate. The ALJ articulated the consistency factor when evaluating the medical opinions, but he did not sufficiently articulate the supportability factor. The ALJ's swift evaluation of the medical opinions does not allow the Court to trace the path of the ALJ's reasoning, which is required. *See* 82 Fed. Reg. at 5858 (stating that the articulation requirements in the rules will allow a subsequent reviewer or reviewing court to trace the path of the adjudicator's reasoning).

The Court next considers whether the ALJ's duty to further develop the record was triggered.

### B.   Whether the ALJ's Duty to Further Develop the Record was Triggered

Plaintiff argues that because the ALJ found all the medical opinions unpersuasive, he had a duty to develop the record regarding Plaintiff's functional limitations. (ECF No. 21 at 7-8.) Plaintiff contends that the ALJ could have, for example, ordered another consultative examination, called a medical expert to testify, remanded for a new determination, or recontacted Dr. Kugel to clarify his opinion. (*Id*.) Defendant counters that the record was thorough, and no such duty was triggered. (*Id*. at 14-15.)

"In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). The duty is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Id*. at 453, 459-60. The duty is heightened when the claimant is unrepresented, and "the ALJ must be especially diligent in exploring for all the relevant facts." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Additionally, "[t]he ALJ's duty to develop the record is heightened when a claimant's

ability to protect his or her interests is adversely affected by a mental impairment." *Bousquet v. Apfel*, 118 F. Supp. 2d 1049, 1056 (C.D. Cal. Oct. 30, 2000) (citing *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992)). The ALJ may discharge this duty in several ways, including subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tidwell v. Apfel,* 161 F.3d 599, 602 (9th Cir. 1998); *Smolen,* 80 F.3d at 1288; *Tonapetyan*, 242 F.3d 1144, 1150 (9th Cir. 2001).

Here, the ALJ found that Plaintiff suffers from severe impairments of anxiety, autism, and schizoaffective disorder. (AR at 32.) Significantly, the record also reflects that Plaintiff was not represented by counsel until after the ALJ's decision was issued. (*Id*. at 47, 228-229.) Accordingly, the ALJ's duty to develop the record was heightened.

Furthermore, the medical opinions in the record reflect that the evidence was not sufficient to allow for a complete evaluation of Plaintiff's functional limitations, and that further development of the record was needed. First, Dr. Kugel, the psychologist who first diagnosed Plaintiff with autism, explained that Plaintiff's psychological evaluation results "should be taken with caution" since it was based on "limited data" due to COVID-19 restrictions. (AR at 394-404.) Dr. Kugel recommended that Plaintiff's cognitive functioning be reevaluated in person when possible. (*Id*. at 400.) The ALJ did not address this recommendation, or the limitations of the data, and simply concluded that Dr. Kugel's opinion was unpersuasive and vague because it did articulate the extent of Plaintiff's limitations in Agency-recognized terms. (*See id*. at 38.)

Second, the state agency reviewing doctors, Dr. Hawkins and Dr. Rozenfeld, both stated that a consultative examination was necessary because "[a]dditional evidence is required to establish [the] current severity of the individual's impairment(s)." (AR at 113, 133.) In other words, the state agency doctors concluded that the evidence before them was insufficient to determine the severity of Plaintiff's impairments. Therefore, the agency's own reviewing doctors indicated that the record was inadequate. Again, the ALJ did not address this limitation, and instead simply concluded that their opinions were unpersuasive

because they did articulate Plaintiff's limitations in Agency-recognized terms, or include a pace and adapting limitation. (*Id*. at 36-37.) The ALJ further stated that "[t]he consultants were tasked with assessing the most the [Plaintiff] could do from a mental capacity standpoint[,]" and that "[s]uch statements did not answer that question." (*Id*. at 37.)

Furthermore, while the ALJ concluded that the record was inconsistent with the need for a limitation on supervisor contact, Dr. Hawkins and Dr. Rozenfeld stated that Plaintiff is only capable of "occasional supervisory contact," and Dr. Taylor stated that Plaintiff's ability to accept instructions from supervisors was moderately impaired. (AR at 122, 141, 419.) The ALJ found Dr. Taylor's opinion unpersuasive, focusing primarily on his recommendation to limit Plaintiff's contact with supervisors. (*See* AR at 37, 38.) The record, however, may not contain sufficient information to make this determination. For example, Dr. Hawkins noted that she was "unsure how moderated limits interacting with supervisors, coworkers and public . . . [and] dealing with . . . unusual stress . . . would play out in the work place." (*Id*. at 115.) Dr. Kugel did not address supervisor contact, but again, he explicitly stated that his findings were based on limited data. The ALJ appeared to rely on observations that Plaintiff was able to answer questions directly, that he was "polite and soft-spoken," that there are no indications of aggressive or volatile behavior, and that he applied for a job at the mall two years earlier to make the determination. (*Id*. at 37-38.)

In sum, despite finding the medical opinions vague, ambiguous, or otherwise unpersuasive, and despite finding that three opinions did not articulate Plaintiff's limitations in Agency-recognized terms, and that two opinions did not assess "the most the Plaintiff do from a mental capacity standpoint" (information necessary to formulate the RFC), the ALJ crafted an RFC with highly specific limitations regarding Plaintiff's ability for task complexity, decision-making, changes in the work setting, quota-based work, co-worker interaction, and public contact. (*See* AR at 28.) It is important that this determination be accurate, as it dictates the jobs that Plaintiff is allegedly capable of performing. The ALJ's decision, however, does not reflect sufficient medical basis for these specific functional findings since the majority of the medical opinions explicitly

1  stated that more information was needed to assess the severity of Plaintiff's impairments, and his related limitations.

Given Dr. Hawkins and Dr. Rozenfeld's recognition that the record was insufficient, Dr. Kugel's recommendation for an in-person reevaluation, the ALJ's rejection of all the medical opinions as unpersuasive and/or vague, Plaintiff's lack of representation and severe mental impairments, the Court finds that the ALJ did not satisfy the heightened duty to develop the record. For example, another in-person psychological reevaluation could have been ordered, clarification could have been sought regarding the opinions found to be vague, and Plaintiff's functional limitations could have been defined in Agency-recognized terms.

Based on the above, the Court finds that the ALJ erred by overlooking the lack of evidence in the record that accurately or completely described Plaintiff's functional limitations. Consequently, the ALJ's RFC assessment is not supported by substantial evidence. *See Rivera v. Berryhill*, 2017 WL 5054656, at **4-5 (C.D. Cal. Oct. 31, 2017) (holding that ALJ's RFC determination was not supported by substantial evidence where the record did not provide sufficient indications of the Plaintiff's functional limitations and the few findings that could translate to functional limitations were ambiguous).

Additionally, it is not clear to the Court how a proper interpretation of the medical opinion evidence, or further development of the record, would have affected Plaintiff's RFC. Accordingly, the Court cannot conclude that this error was harmless. *See Danielle L. v. Saul*, No. 1:18-CV-3213-FVS, 2020 WL 3619081, at *9 (E.D. Wash. Mar. 11, 2020) (citing, *e.g., Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (error supporting a less restrictive RFC is harmless where it would not affect the ultimate non-disability determination).

## II.   CONCLUSION

The only remaining question for the Court is whether to remand for further administrative proceedings or for the payment of benefits. "The decision of whether to remand a case for additional evidence, or simply to award benefits[,] is within the

discretion of the court." *Trevizo*, 871 F.3d at 682 (*quoting Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). A remand for an immediate award of benefits is appropriate only in rare circumstances. *Leon v. Berryhill*, 874 F.3d 1130 (9th Cir. 2017). The Court concludes that "[t]he rare circumstances that result in a direct award of benefits are not present in this case." (*Id.*)

Instead, the Court finds further administrative proceedings would serve a meaningful purpose. On remand, the ALJ must evaluate and explain both the consistency and the supportability factor in discussing each medical opinion, and develop the record further if necessary. All reasons set forth by the ALJ's decision must be clearly articulated so that any subsequent reviewer can assess how the ALJ evaluated the claimant's symptoms and the record. *Stout*, 454 F.3d at 1054; *Brown-Hunter*, 806 F.3d at 492.

The Court is mindful that this case faced challenging circumstances brought about by the pandemic, which limited the ability of medical providers to give in-person medical care to patients. The Court further notes that the ALJ did a thorough review of the relevant medical records. However, the fact that Plaintiff was not represented by counsel, coupled with his mental disability, created the need to have a more well-developed record. Based upon the record before the Court, the Court cannot conclude that this duty was fulfilled.

Based on the foregoing, the Court **VACATES** the ALJ's decision and **REMANDS** this case for further administrative proceedings consistent with the findings presented herein. The Clerk is directed to issue a judgment and close this case.

**IT IS SO ORDERED**.

Dated:  September 26, 2025

Hon. Steve B. Chu
United States Magistrate Judge